**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**KAREN MARIE WRIGHT,**

    **Plaintiff,**

v.                                     **Case No. 3:11cv256/MCR/EMT**

**SANDESTIN INVESTMENTS, LLC
d/b/a SANDESTIN GOLF AND BEACH
RESORT,**

    **Defendant.**
_____/

## ORDER

      Plaintiff Karen Marie Wright ("Wright") filed this lawsuit against her former employer, Defendant Sandestin Investments, LLC, d/b/a Sandestin Golf and Beach Resort ("Sandestin Investments"), alleging pregnancy discrimination, in violation of federal and state law, *see* 42 U.S.C. § 2000e(k), Fla. Stat. § 760.10, and violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. Pending before the court is Wright's motion for partial summary judgment as to liability on the FMLA count (doc. 34), which the defendant opposes (doc. 44), and Sandestin Investments' motion for summary judgment (doc. 45), which Wright opposes (doc. 54). Having fully considered the record and the parties' arguments, the court finds that there are genuine issues of fact that preclude a grant of summary judgment on either motion.

**Background**[1]

From 2002 through the date of her termination, Wright was an employee of Intrawest ULC ("Intrawest"), which operated the Sandestin Golf and Beach Resort ("the Resort"). She worked full time as an executive administrative assistant for several different vice presidents of the company, most recently for Vice President Matthew Lindley. Throughout her employment, Wright shared the office suite with one or two other executive assistants who worked for various executives.

In late 2009, Wright received approval from Intrawest to take FMLA leave for the birth of her child, and she began her maternity leave on Monday, January 11, 2010. Prior to beginning this period of leave, Wright was told of a possibility that, when she returned, she would be working for Lindley and also an anticipated new vice president, Steve Schaefer. Wright was scheduled to return to work on Monday, April 12, 2010. During her absence, Linda Taylor, who was the only other executive assistant at the time, also took a leave of absence. Lauren Callahan temporarily filled in for Taylor, and ultimately stayed on full time. When Taylor returned from her leave of absence, she began working part-time for the new vice president, Mr. Schaefer.

On March 15, 2010, during Wright's approved maternity leave, Intrawest sold the Resort to Defendant Sandestin Investments, LLC ("Sandestin Investments"). Wright acknowledged in her deposition that no one made any negative comment or expressed hostility toward her because of her pregnancy or maternity leave. However, on March 22, 2010, Wright discovered something was amiss regarding her job when informed by a personal friend that someone else's voice was on Wright's office phone voicemail; Wright called her own number and verified it was Taylor's voice. Wright telephoned Sandra Fowler, Director of Human Resources, about the matter and was informed that her position

---

[1] For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the plaintiff. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted). The court is mindful that "what is considered to be the facts at the summary judgment stage may not turn out to be the actual facts if the case goes to trial." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

had been eliminated. Fowler suggested that Wright could apply for other available jobs with the company, but Wright asserts none of the suggested positions was comparable in pay to her prior position. Wright received a formal letter from Fowler confirming her termination dated April 2, 2010, while she was still on maternity leave, stating that her termination was due to a reorganization that would have occurred regardless of her current use of family medical leave. According to Wright, although the ownership of the resort changed from Intrawest to Sandestin Investments, nothing changed with regard to the operation of the business and no one else was terminated in the transition.

Fowler had been Director of Human Resources for Intrawest, and she kept the same position when the resort's ownership transferred to Sandestin Investments. Fowler testified that Sandestin Investments retained every Intrawest employee who chose to continue their employment after the transition of ownership; the supervisory positions did not change; she could not recall anyone who chose to leave or was terminated other than the plaintiff; and she testified that vacation and sick leave accrual was not altered during the transition, stating, "at the time, everything stayed the same." (Doc. 36-1, at 12). Fowler explained that Sandestin Investments attempted to make the transition to the new ownership as seamless as possible for employees. According to Fowler, the human resources department had to recreate a new system of employee record keeping "from a blank slate" because Intrawest took all of its files, but she explained that "we transitioned everything in, and then it was afterwards whenever we changed the structure." (Doc. 36-1, at 12-13). However, Fowler explained that FMLA leave approved by Intrawest did not transition and Sandestin Investments did not honor Intrawest's FMLA leave "because we were a new company." (Doc. 36-1, at 15).

Sandestin Investments's President John Russell was not aware of and could not recall any list prepared of employees who were identified for position elimination. He stated the company reviewed positions individually as they determined staffing levels in connection with the transition of ownership from Intrawest to Sandestin Investments. Wright's supervisor, Lindley, testified that he did not know who made the decision to terminate Wright but that he had been a party to discussions about possible cost-saving

measures and he was "pretty sure" it had come up while she was out on leave.[2] (Doc. 56-5 at 7). Lindley testified that he no longer had enough work to justify an administrative assistant and suggested eliminating Wright's position, but he could not recall if this came up in a meeting or informal discussion; he did not make this recommendation in writing. Lindley said he did not make the decision to terminate Wright, and he acknowledged that he was satisfied with her job performance. Accordingly to Lindley, after Wright began her maternity leave, he handled most of his own work and assigned tasks to Callahan and Taylor when necessary.[3]

Another executive, Ned Webster, testified that the executives were under pressure to eliminate overhead just prior to the sale and during the transition. According to Webster, Lindley had made the suggestion to eliminate Wright's executive assistant position during one of their regular morning executive committee meetings several months before and that he (Webster), Lindley and Russell were the final decision makers. He testified that Wright would have been allowed to return to work but for the company's decision to eliminate her position.

Wright presented the deposition of Peter Reed, who had been director of finance for Intrawest and kept the same position after the transition to Sandestin Investments. He later became vice president of finance. He testified that he did not know whether there had been any reorganization of the work force during the transition of ownership.

**Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson*

---

[2] Lindley also recalled having advised as early as 2006 that he thought they were "overly burdened with administrative help in the executive building." (Doc. 45-1, at 9). At that time, they reduced staff by a large number.

[3] Lindley testified that he subsequently left the company on May 3, 2011, when his position was eliminated.

Case No. 3:11cv256/MCR/EMT

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). The court must view all the evidence, and all factual inferences reasonably drawn from the evidence, in the light most favorable to the nonmoving party, *see Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993), but the nonmoving party must present more in support of his claim than evidence which is "merely colorable" or "not significantly probative," to survive a properly supported summary judgment motion, *Anderson*, 477 U.S. at 249.

Pregnancy discrimination claims are analyzed the same as sex discrimination claims under Title VII. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). A plaintiff must show that the employer intended to discriminate against her because of her pregnancy, using either direct or indirect evidence. *Id.*

Under the FMLA, any employer who interferes with, denies, or retaliates against an employee based on the exercise of FMLA rights is liable for damages. *See* 29 U.S.C. § 2615(a)(1)&(2); 29 C.F.R. § 825.220(c); *see also Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2011). To be eligible for benefits, an employee must have worked for the employer for 12 consecutive months and at least 1,250 hours. An "employer" for purposes of FMLA coverage includes one who is a "successor in interest" of an employer. 29 U.S.C. § 2611(4)(A). "To state a claim of interference with a substantive [FMLA] right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Strickland*, 239 F.3d at 1206-07. The right to reinstatement may be denied in certain circumstances, however, such as a reduction in force. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–54 (11th Cir. 2000). An employer may "raise its alleged lawful reasons for termination as an affirmative defense to liability," permitting the employer to avoid FMLA liability for damages by demonstrating "that it would have discharged [the] employee for

a reason wholly unrelated to the FMLA leave." *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1310 (11th Cir. 2011). The FMLA retaliation claim requires a showing that the adverse employment decision was causally related to the protected FMLA activity. *Strickland*, 239 F.3d at 1207.

A.   <u>Plaintiff's Motion for Partial Summary Judgment on Count II (Liability)</u>

In Count II, Wright claims that Sandestin Investments interfered with her right to FMLA leave by terminating her employment while she was on pregnancy FMLA leave, instead of reinstating her. Wright argues she is entitled to partial summary judgment as to liability on this claim because Sandestin Investments is liable as a successor in interest employer, having taken over the resort while Wright was on maternity leave, and that there is no dispute Sandestin Investments interfered with her FMLA use by terminating her while she was on maternity leave.

Although an employee is not eligible for the protections of the FMLA until she has worked for the employer for at least 12 consecutive months, and Wright did not work for the new owner, Sandestin Investments, for this length of time, there is no dispute in this case that Wright had worked for Intrawest for more than 12 months and over 1.250 hours, making her an eligible employee at the time she took her approved FMLA maternity leave. There is also no dispute that she was terminated by Sandestin Investments while she was out on this approved FMLA leave and that the transition of ownership of the resort from Intrawest to Sandestin Investments occurred while she was on FMLA leave. A new employer may be liable as a "successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II). The FMLA does not define the term "successor in interest," and the Eleventh Circuit has not yet provided guidance on the term. However, the Department of Labor ("DOL") regulations instruct that for purposes of the FMLA, Title VII factors should be considered in determining whether an employer is a successor in interest, except that notice of the employee's claim is not a factor. *See* 29 C.F.R. § 825.107(a). The regulation outlines eight factors which courts should evaluate in the totality of the circumstances to determine whether there is (1) substantial continuity of business operations; (2) use of the same plant; (3) the same work force; (4) similar jobs and working conditions; (5) similar

supervisory personnel; (6) similar equipment or production methods; (7) similar products and services; and (8) whether the predecessor had the ability to provide relief. *Id.* § 825.107(a),(b). The origins of successor liability are equitable and "intensely fact-specific [in] nature," rendering fairness "a prime consideration in its application." *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 782 (9th Cir. 2010) (internal marks omitted). The Sixth Circuit has explained that the regulation's enumerated factors are part of "an overarching, three part test considering the *equities* of imposing a particular legal obligation on a successor," in which courts consider (1) the employee's interests, (2) the employer's interests, and (3) "the federal policy goals of the statute."[4] *Grace v. USCAR*, 521 F.3d 655, 672 (6th Cir. 2008).

Wright has presented deposition testimony indicating that there was substantial continuity in the business operations between Intrawest and Sandestin Investments, and similarity in the work force, jobs, and supervisory personnel. Fowler testified that all employees transitioned to the new company in their same positions with no change other than the name of the owner of the resort, which shows up as payor on their paycheck. According to Fowler, Sandestin Investments took over an ongoing resort operation in as seamless a manner as possible for the employees. In opposition to the motion, Sandestin Investments points to Fowler's deposition testimony that the human resources department had to recreate personnel files for the record-keeping process, that "personnel practices for all the employees changed" after the transition, and that employee benefits "were significantly affected by the transition." (Doc. 36-1, at 12-13). Fowler testified that the human resources department had about 30 days to get a working record-keeping system in place because Intrawest took their files, but she did not state whether the system

---

[4] Several district courts have applied these standards. *See generally*, *Finnerty v. Wireless Retail, Inc.*, 624 F. Supp. 2d 642, 656-64 (E.D. Mich. 2009) (finding equities of the case did not favor successor liability and granting defendant's motion for summary judgment), *aff'd* 390 Fed. Appx. 520 (6th Cir. 2010); *Carlson v. Rent-A-Center, Inc.*, 237 F. Supp. 2d 114, 125-27 (D. Me. 2003) (concluding the movant had not presented sufficient credible evidence by which to make the totality of the circumstances determination on the successor in interest question); *Rhoads v. FDIC*, 956 F. Supp. 1239, 1253-54 (D. Md. 1997) (concluding defendant was a successor in interest and allowing plaintiff's claim to proceed), *aff'd in pertinent part and reversed on other parts*, 257 F.3d 373 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002). *See also Sullivan*, 623 F.3d at 782-83 (citing cases).

Case No. 3:11cv256/MCR/EMT

differed from that used by Intrawest in any material way or that it impacted the employees' jobs or working conditions in any material way. As to accrued benefits, Fowler said Sandestin Investments "transitioned everything in, and then it was afterwards when[ ] we changed the structure." (Doc. 36-1, at 12-13). Fowler explained that Sandestin Investments "didn't honor FML for any employees with the new company because we were a new company." (Doc. 36-1, at 15). Fowler's statements in regards to the issue of successor in interest are conclusory in nature and thus do not create a genuine issue of fact. In sum, although Sandestin Investments asserts there are "some facts" contradicting Wright's successor in interest analysis, it fails to identify a material issue of fact that could impact the analysis.

As to the three overarching equitable considerations, *see Grace*, 521 F.3d at 672, the employee's interest here is consistent with the FMLA's goals of ensuring reasonable medical leave. The congressionally expressed purposes of the FMLA include balancing the demands of the workplace with the needs of families and entitling employees to take reasonable leave for medical reasons, such as the birth of a child, all in a manner that also accommodates the employers' legitimate business interests. 29 U.S.C. § 2601(b). There is no dispute Wright was eligible for FMLA leave with Intrawest and her maternity leave had been properly pre-approved. Sandestin Investments has not set forth any genuine issue of material fact impacting these equitable considerations in favor of the employer's interest in this inquiry. Fowler's testimony indicates that Sandestin Investments simply chose not to honor Intrawest's FMLA leave, despite the fact that any changes in policies or benefits impacting employees occurred at some point after the transition of ownership. Having fully considered the record in relation to the relevant DOL factors and overarching equities, the court finds no genuine issue of fact and that consideration of the relevant factors and equities weighs in favor of a conclusion that Sandestin Investments was "a successor in interest to the employer" under the FMLA.[5]

---

[5] The court agrees with Wright that the eighth factor, whether the predecessor had the ability to provide relief, is inapplicable because the circumstances of this case clearly show that it was Sandestin Investments, not the predecessor, that terminated Wright's employment while she was on maternity leave.

differed from that used by Intrawest in any material way or that it impacted the employees' jobs or working conditions in any material way. As to accrued benefits, Fowler said Sandestin Investments "transitioned everything in, and then it was afterwards when[ ] we changed the structure." (Doc. 36-1, at 12-13). Fowler explained that Sandestin Investments "didn't honor FML for any employees with the new company because we were a new company." (Doc. 36-1, at 15). Fowler's statements in regards to the issue of successor in interest are conclusory in nature and thus do not create a genuine issue of fact. In sum, although Sandestin Investments asserts there are "some facts" contradicting Wright's successor in interest analysis, it fails to identify a material issue of fact that could impact the analysis.

As to the three overarching equitable considerations, *see Grace*, 521 F.3d at 672, the employee's interest here is consistent with the FMLA's goals of ensuring reasonable medical leave. The congressionally expressed purposes of the FMLA include balancing the demands of the workplace with the needs of families and entitling employees to take reasonable leave for medical reasons, such as the birth of a child, all in a manner that also accommodates the employers' legitimate business interests. 29 U.S.C. § 2601(b). There is no dispute Wright was eligible for FMLA leave with Intrawest and her maternity leave had been properly pre-approved. Sandestin Investments has not set forth any genuine issue of material fact impacting these equitable considerations in favor of the employer's interest in this inquiry. Fowler's testimony indicates that Sandestin Investments simply chose not to honor Intrawest's FMLA leave, despite the fact that any changes in policies or benefits impacting employees occurred at some point after the transition of ownership. Having fully considered the record in relation to the relevant DOL factors and overarching equities, the court finds no genuine issue of fact and that consideration of the relevant factors and equities weighs in favor of a conclusion that Sandestin Investments was "a successor in interest to the employer" under the FMLA.[5]

---

[5] The court agrees with Wright that the eighth factor, whether the predecessor had the ability to provide relief, is inapplicable because the circumstances of this case clearly show that it was Sandestin Investments, not the predecessor, that terminated Wright's employment while she was on maternity leave.

Wright argues that because the defendant is a successor in interest, she is entitled to partial summary judgment for FMLA interference based on strict liability and the failure to reinstate. Sandestin Investments argues that even assuming it was incorrect on the successor in interest question, liability is not established because it is entitled to proceed on its defense that it would have terminated the plaintiff regardless of her use of FMLA leave. The Eleventh Circuit has plainly stated that neither the right to commence leave nor the right to reinstatement following FMLA leave is absolute. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010); *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008). The regulations provide that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a) (providing examples such as lay off or elimination of a shift that may justify denial of reinstatement); *see also O'Connor*, 200 F.3d at 1354 (holding reinstatement was not required where the plaintiff was subject to a legitimate reduction in force). Thus, the employer will not be found to have violated the FMLA by denying reinstatement if the employer "'demonstrate[s] that it would have discharged the employee had he not been on FMLA leave.'" *Martin*, 543 F.3d at 1267 (quoting *Strickland*, 239 F.3d at 1208).

The court concludes that the successor in interest issue merely establishes that the defendant is subject to liability as an "employer" under the FMLA and that, by virtue of the continuity of the business, the plaintiff's FMLA eligibility carried over to the new owner. This is not, however, equivalent to finding the employer liable for an FMLA violation. As the cases cited above demonstrate, strict liability is not the rule. Wright does not argue in her motion for partial summary judgment that she is entitled to judgment as a matter of law on Sandestin Investments' defense. Accordingly, the motion for partial summary judgment will be denied.

B.   <u>Defendant's Motion for Summary Judgment</u>

Sandestin Investments moves for summary judgment, first arguing that Wright's pregnancy discrimination claim is not actionable under the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10. Wright disagrees, citing state and federal law to the

contrary. The Florida statute does not expressly protect against "pregnancy" discrimination, and the Florida District Courts of Appeal are not in agreement with regard to whether pregnancy discrimination is actionable under the FCRA. *Compare Delva v. Continental Group, Inc.*, 96 So. 3d 956, 957-58 (Fla. 3d DCA 2012) (concluding a prohibition against pregnancy-based discrimination is not included in Florida law, and following *O'Loughlin v. Pinchback*, 579 So. 2d 788, 790 (Fla. 1st DCA 1991)), *with Carsillo v. City of Lake Worth*, 995 So. 2d 1118, 1119 (Fla. 4th DCA 2008) (construing the Florida statute consistently with Title VII, and noting that Congress explained in enacting the PDA that it had intended to prohibit discrimination based on pregnancy when it passed Title VII; thus, pregnancy is a protected class under Florida law), *rev. denied*, 20 So. 3d 848 (Fla. 2009), *cited with approval in Valentine v. Legendary Marine FWB, Inc.*, No. 3:09cv334/MCR/EMT, 2010 WL 1687738 (N.D. Fla. 2010). The court in *Delva,* which was decided on July 25, 2012, certified to the Florida Supreme Court a conflict with the *Carsillo* case. The Florida Supreme Court has not yet resolved the conflict. Federal district courts in this circuit are also divided on the issue, and it has not been addressed by the Eleventh Circuit. *Compare, e.g., DuChateau v. Camp Dresser & McKee, Inc.*, 822 F. Supp. 2d 1325 (S.D. Fla. 2011) (concluding the FCRA does not provide a claim for pregnancy discrimination because when the Florida legislature renamed its statute in 1977 and again in1992, the language was not amended to mirror the language of the PDA), *with Terry v. Real Talent, Inc.*, No. 8:09cv1756, 2009 WL 3494476, at *2 (M.D. Fla. 2009) (construing FCRA consistently with Title VII's protections, relying on the reasoning of *Carsillo*) *and Martin v. Meadowbrook Golf Group*, Inc.*, No.* 3:06cv464/RS (doc. 10) (N.D. Fla. Nov. 2, 2006).

Absent express guidance by the Florida Supreme Court and in light of the conflict among the intermediate courts, this court must do its best to anticipate how the Florida Supreme Court will rule on the issue. *See State Farm Mut. Auto. Ins. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011). The Florida Supreme Court instructs, "it is axiomatic that in construing a statute courts must first look at the actual language used." *Woodham v. Blue Cross and Blue Shield of Fla., Inc.*, 829 So. 2d 891, 897 (Fla. 2002). The FCRA

prohibits discrimination in employment "because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a). The term "sex" is not explicitly defined. However, the Florida legislature expressly declared that the FCRA "shall be liberally construed to further the general purposes stated in this section." Fla. Stat. § 760.01(3)*; see also Woodham*, 829 So. 2d at 894. Additionally, the Florida Supreme Court has noted that the FCRA's "stated purpose and statutory directive are modeled after Title VII."[6] *Woodham*, 829 So. 2d at 894 (internal marks omitted). Guided by these principles, this court anticipates that the Florida Supreme Court will agree with the decision of *Carsillo*, which reasons, because "Congress made clear in 1978 [through the Pregnancy Discrimination Act] that its intent in the original enactment of Title VII in 1964 was to prohibit discrimination based on pregnancy as sex discrimination, it was unnecessary for Florida to amend its law to prohibit pregnancy discrimination." *Carsillo*, 995 So. 2d at 1120 (citing *Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 462 U.S. 669, 678-79 (1983)).[7] Therefore, the court finds that Sandestin Investments is not entitled to summary judgment on its argument that Wright's pregnancy discrimination claim is not actionable under the FCRA.

Sandestin Investments also asserts that it is entitled to summary judgment on the pregnancy discrimination claims, arguing that Wright cannot make out a *prima facie* case because she was not replaced, and instead, her position was legitimately eliminated as a cost-saving measure in conjunction with the change of ownership. Wright argues she has established a *prima facie* case of discrimination and has also shown inconsistencies in Sandestin Investment's reason for terminating her, raising a question of pretext.

Under Title VII and FCRA, which are construed similarly, the court considers the

---

[6] Also, Florida courts are in agreement that because the statute is patterned after Title VII, federal case law regarding Title VII applies when construing the FCRA. *See, generally, Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 n.3 (Fla. 1st DCA 2002).

[7] In *Newport News*, the Supreme Court discussed how, in enacting the PDA, Congress had overturned the Court's decision of *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976). 462 U.S. at 676-79. Also, the Court noted that in doing so, proponents of the bill had repeatedly emphasized that the amending legislation of the PDA was needed "to reestablish the principles of Title VII law as they had been understood prior to the Gilbert decision." *Id.* at 679.

Case No. 3:11cv256/MCR/EMT

record through the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981), to determine whether there is circumstantial evidence in the record to survive summary judgment.[8] A *prima facie* case of pregnancy discrimination, like claims based on race or sex, is established if the plaintiff shows she was a member of the protected class, she was qualified for her position, she suffered an adverse employment action, and work or disciplinary rules were applied differently to her than to nonpregnant employees. *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-13 & 1314 (11th Cir. 1994). Wright has set forth a *prima facie* case of discrimination. The record contains evidence from which a trier of fact could conclude that Wright was pregnant and her employer knew this, that she was qualified for her job, that she was terminated while on maternity leave, and that the other executive assistants, Callahan and Taylor, who were not pregnant, were not terminated. As to pretext, Wright asserts that the record contains inconsistencies from which a trier of fact could find pretext. While the company claimed Wright's supervisor, Lindley, no longer had need of an assistant, citing his deposition testimony, Wright testified that Lindley had plenty of work to keep her busy as a full-time employee prior to her maternity leave, and she had been led to believe she would return to work for Lindley and possibly also for Schaefer.[9] Instead, the company hired Callahan during Wright's maternity leave and then chose to retain both Callahan and Taylor, facts from which a reasonable jury could conclude that the company had a continuing need of two executive assistants as before Wright's maternity leave but chose to employ Callahan and retain Taylor, instead of reinstating Wright. There is also conflicting evidence regarding when Wright's termination was suggested; Lindley was quite sure it had been while she was on maternity leave, whereas Webster stated it had been

---

[8] Alternatively, the court considers whether a plaintiff has shown discriminatory intent through "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The plaintiff does not argue that she has made this showing; instead, she argues her case through the burden-shifting framework.

[9] Lindley testified he had no complaints about Wright's work and that his position did not change with the transition to new ownership. Curiously, however, he refused to return Wright's calls or emails when Wright attempted to contact him after learning of her termination from Fowler.

Case No. 3:11cv256/MCR/EMT

contemplated months before. Also, contrary to Fowler's assertion in Wright's April 2, 2010, termination letter that the company had offered her other positions that were not of interest to Wright, Wright testified Sandestin Investments did not "offer" her any other positions; she was merely told she could apply for other positions that were open, but none was even close to her prior pay level. Moreover, it is undisputed that no other positions were eliminated and a question of fact exists regarding whether Wright's position was eliminated or whether she – the only person terminated – was simply replaced by Callahan. The record contains evidence from which a fact finder could reasonably conclude that the reason offered for terminating Wright's employment was disingenuous and a pretext for discrimination based on her pregnancy and use of maternity leave. Thus, Sandestin Investments is not entitled to summary judgment on the pregnancy discrimination claims.

Finally, Sandestin Investments asserts it is entitled to summary judgment on its affirmative defense to the FMLA interference claim, i.e., that it would have terminated Wright regardless of her use of FMLA leave, and on the FMLA retaliation claim on grounds that Wright cannot meet the causal connection necessary to demonstrate a *prima facie* case of retaliation. The court disagrees on both arguments. Wright has set forth evidence to establish a *prima facie* case of interference and also retaliation based on her termination while on maternity leave, which demonstrates a close temporal proximity between Wright's use of FMLA leave and her termination. *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010) (noting the close temporal proximity between use of FMLA leave and termination is "more than sufficient" to establish a genuine issue of material fact on causation) (internal marks omitted). Additionally, the same reasons and fact issues identified above demonstrate that there is a question of fact regarding whether Wright would have been terminated absent her use of FMLA leave.

Accordingly:

1. Plaintiff's motion for partial summary judgment (doc. 34) is DENIED.
2. Defendant's motion for summary judgment (doc.45) is DENIED.
3. Because mediation occurred more than one year ago, the court hereby refers

this case to the magistrate judge for a settlement conference to be concluded within thirty (30) days.

      4.      The case shall be scheduled for trial by separate order.

**DONE and ORDERED** this 12th day of December, 2012.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**